**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SEAN OWENS, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:17-cv-01719-G-BK** |
| | § | |
| NEOVIA LOGISTICS SERVICES, LLC, | § | |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

---

Jana S. Baker
Texas Bar No. 00794610
jana.baker@ogletreedeakins.com
Jeremy W. Hays
Texas Bar No. 24083156
jeremy.hays@ogletreedeakins.com

**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
8117 Preston Road, Suite 500
Dallas, Texas  75225
Telephone:  214.987.3800
Facsimile:  214.987.3927

**ATTORNEYS FOR DEFENDANT**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

I.    INTRODUCTION ............................................................................1

II.   STATEMENT OF MATERIAL FACTS ..........................................................3

      A.    Plaintiff's Employment with Neovia. ..................................................3

      B.    Plaintiff's Primary Duty Was to Apply Various Tools and Methodologies
            to Improve Processes at Client Facilities. ..............................................4

      C.    Plaintiff's Termination and Subsequent Claims. .....................................7

      D.    Procedural History of This Case. ......................................................7

III.  SUMMARY JUDGMENT STANDARD ........................................................8

IV.   ARGUMENT AND AUTHORITIES ...........................................................9

      A.    Plaintiff Was Exempt from the FLSA. ...............................................10

            1.    Recent Supreme Court precedent requires that courts give a "fair
                  reading" to the FLSA's many exemptions.................................10

            2.    The FLSA's "administrative exemption" applied to Plaintiff. .................11

      B.    Plaintiff's Has Not Shown That He Is Entitled to Damages, and His
            Damages Calculations are Flawed. .....................................................24

            1.    Plaintiff's evidence is insufficient to prove his alleged damages. .............24

            2.    The fluctuating workweek applies to Plaintiff's claim. ...........................26

      C.    Plaintiff Has Not Established That Neovia Committed a Willful Violation
            of the FLSA.............................................................................29

V.    CONCLUSION..............................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)............................................................................................11

*Carbaugh v. Unisoft Intern., Inc.*,
  No. Civ. A. H-10-0670, 2011 WL 5553724 (S.D. Tex. Nov. 15, 2011) ................................23

*Carley v. Crest Pumping Techs., L.L.C.*,
  17-50226, 2018 WL 2246178 (5th Cir. May 16, 2018)............................................................11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)................................................................................................9

*Clark v. Williamson County*,
  No. A-10-CA-869 LY, 2012 WL 1222950 (W.D. Tex. Apr. 11, 2012)................................28

*Condo v. Sysco Corp.*,
  1 F.3d 599 (7th Cir. 1993) ........................................................................................29

*Cruz v. Lawson Software, Inc.*,
  764 F. Supp. 2d 1050 (D. Minn. 2011)..............................................................15, 16, 19, 23

*Dalheim v. KDFW–TV*,
  918 F.2d 1220 (5th Cir. 1990) ........................................................................................12

*Dewan v. M-I, L.L.C.*,
  858 F.3d 331 (5th Cir. 2017) ........................................................................10, 14, 16

*Dixon v. First Choice Messengers, Inc.*,
  No. 4:14-CV-02895, 2016 WL 774680 (S.D. Tex. Feb. 29, 2016) ........................................26

*Donovan v. Mercer*,
  747 F.2d 304 (5th Cir. 1984) ........................................................................................28

*Eason v. Thaler*,
  73 F.3d 1322 (5th Cir. 1996) ........................................................................................9

*Encino Motorcars, LLC v. Navarro*,
  138 S. Ct. 1134 (2018)............................................................................3, 10, 11

*Evans v. Lowe's Home Centers, Inc.*,
  No. 3:CV-03-0438, 2006 WL 1371073 (M.D. Pa. May 18, 2006)........................................29

*Flood v. New Hanover County*,
    125 F.3d 249 (4th Cir. 1997) ..................................................................................29

*Garcia v. Yachting Promotions, Inc.*,
    No. 15-20776-Civ-Scola, 2015 WL 12533144 (S.D. Fla. Dec. 8, 2015) ..............................29

*Grimes v. Tex. Dep't of Mental Health & Mental Retardation*,
    102 F.3d 137 (5th Cir. 1996) ....................................................................................9

*Henson v. Santander Consumer USA Inc.*,
    137 S. Ct. 1718 (2017) ............................................................................................11

*Hills v. Entergy Operations, Inc.*,
    866 F.3d 610 (5th Cir. 2017) ..................................................................................28

*Ihegword v. Harris County Hosp. Dist.*,
    555 F. App'x 372 (5th Cir. 2014) .......................................................................24, 26

*Johnson v. Heckmann Water Res. (CVR), Inc.*,
    758 F.3d 627 (5th Cir. 2014) ..........................................................................10, 24, 26

*Kirk v. Invesco, Ltd.*,
    No. CV H-15-833, 2016 WL 4394336 (S.D. Tex. Aug. 18, 2016), *aff'd*, 700 F.
    App'x 334 (5th Cir. 2017), *cert. dismissed*, 138 S. Ct. 1164 (2018) ..............................25, 26

*Kohl v. Woodlands Fire Dep't*,
    440 F. Supp. 2d 626 (S.D. Tex. 2006) ....................................................................17

*Lewallen v. Conmed Corp.*,
    261 F. App'x 704 (5th Cir. 2008) .............................................................................9

*Lott v. Howard Wilson Chrysler–Plymouth, Inc.*,
    203 F.3d 326 (5th Cir. 2000) ..................................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
    475 U.S. 574 (1986) ................................................................................................98

*McLaughlin v. Richland Shoe Co.*,
    486 U.S. 128 ..........................................................................................................30

*Mitchell v. Abercrombie & Fitch Co.*,
    428 F. Supp. 2d 725 (S.D. Ohio 2006), *aff'd*, 225 F. App'x 362 (6th Cir.
    2007) ....................................................................................................................29

*Novick v. Shipcom Wireless, Inc.*,
    No. 16-CV-0730, 2016 WL 9308201 (S.D. Tex. Nov. 22, 2016) ..........................................28

*Oti v. Green Oaks SCC, LLC*,
   No. 4:13-CV-816-A, 2015 WL 329216 (N.D. Tex. Jan. 23, 2015) ........................................26

*Overnight Motor Transportation Co. v. Missel*,
   316 U.S. 572 (1972) ..........................................................................................................26

*Owens v. CEVA Logistics/TNT*,
   No. 4:11-cv-2237 (S.D. Tex. filed June 15, 2011) ...............................................................8

*Owsley v. San Antonio Indep. Sch. Dist.*,
   187 F.3d 521 (5th Cir. 1999) ............................................................................................19

*Piscione v. Ernst & Young, L.L.P.*,
   171 F.3d 527 (7th Cir. 1999) .....................................................................................14, 23

*Ramos v. Telgian Corp.*,
   176 F. Supp. 3d 181, 195-196 (E.D.N.Y. 2016) .................................................................29

*Renfro v. Ind. Mich. Power Co.*,
   370 F.3d 512 (6th Cir. 2004) ............................................................................................13

*Samson v. Apollo Res., Inc.*,
   242 F.3d 629 (5th Cir. 2001) ............................................................................................10

*Scott v. Univ. of Miss.*,
   148 F.3d 493 (5th Cir. 1998) ..............................................................................................9

*Singer v. City of Waco, Tex.*,
   324 F.3d 813 (5th Cir. 2003) ............................................................................................29

*Steele v. Leasing Enterprises, Ltd.*,
   826 F.3d 237 (5th Cir. 2016) ............................................................................................29

*Verkuilen v. Mediabank*,
   No. 09 C 3527, 2010 WL 3003860 (N.D. Ill. July 27, 2010) ..............................................23

*Walters v. Livingston*,
   642 F. App'x 416 (5th Cir. 2016) ........................................................................................9

*Wolfslayer v. Ikon Office Sols., Inc.*,
   No. Civ. A. 03-6709, 2005 WL 181913 (E.D. Pa. Jan. 26, 2005) .................................13, 14

*York v. City of Wichita Falls*,
   944 F.2d 236 (5th Cir. 1991) ............................................................................................14

*Zannikos v. Oil Inspections (U.S.A.), Inc.*,
   605 F. App'x 349 (5th Cir. 2015) ......................................................................................30

**Statutes**

29 U.S.C. § 207...................................................................................................10, 26

29 U.S.C. § 213...................................................................................................10, 11

29 U.S.C. § 255.........................................................................................................29

Fair Labor Standards Act .................................................................................. *passim*

**Other Authorities**

29 C.F.R. § 541.200...................................................................................................11

29 C.F.R. § 524.201.......................................................................................14, 15, 16

29 C.F.R. § 541.202.............................................................................16, 17, 23, 24

29 C.F.R. § 541.203...................................................................................................13

29 C.F.R. § 778.114...........................................................................................27, 29

Fed. R. Civ. P. 56.................................................................................................8, 9

U.S. Dep't. of Labor, Wage & Hour Div., Op. Letter (Sept. 12, 1977)........................................16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SEAN OWENS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:17-cv-01719-G-BK** |
| | § | |
| **NEOVIA LOGISTICS SERVICES, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Defendant Neovia Logistics Services, LLC's ("Neovia") hereby files its brief in support of its Motion for Summary Judgment (the "Motion").

## I.      INTRODUCTION

Efficiency is the core of Neovia's business.  As a provider of supply-chain solutions to large manufacturers, Neovia provides value to these manufacturers by moving inventory quicker and with fewer errors than its customers could do themselves.  Neovia constantly looks to improve its procedures and make them more efficient and cost-effective.  Neovia calls this process "Continuous Improvement."

As efficiency experts, Neovia's Continuous Improvement team members master methodologies that provide them with tools to make processes more efficient.  These sets of tools include "Lean," "Six Sigma," and the "Neovia Operating System."  The Neovia Operating System, or "NOS," is a proprietary process-improvement system honed over Neovia's 30-year history.  Neovia deploys its team of specialists to rescue struggling warehouses worldwide by improving the processes those warehouses employ.

Plaintiff Sean Owens ("Plaintiff") was a member of Neovia's Continuous Improvement team for just under two years. His annual salary during this time was over $85,000—significantly higher than the salaries of the vast majority of Neovia's workforce. Plaintiff knew from the time he signed his offer letter with Neovia that the position was exempt from overtime under the Fair Labor Standards Act (the "FLSA"). Plaintiff had sued a previous employer under the FLSA, challenging his exempt status, so he knew what this status meant. As a Continuous Improvement Supervisor, Plaintiff :

- led teams of employees in workshops designed to improve processes;

- analyzed supply-chain operations to find ways to reduce waste and make those operations more efficient, using his expertise in Lean, Six Sigma, and NOS;

- recommended process changes to business leaders within Neovia to solve operational problems and assisted in implementing his recommendations;

- trained and evaluated Neovia's warehouse employees as the subject-matter expert on process improvement; and

- decided which operations to audit, conducted the audits he determined were necessary, and reported his findings and recommendations to company leadership.

After less than two years, Neovia terminated Plaintiff's employment for falsifying travel expenses. Shortly thereafter, Plaintiff accused Neovia of a wide variety of misdeeds in various different forums, including this lawsuit, and he has threatened to bring still more claims. Plaintiff has, to date, failed to succeed on any of his claims, complaints, and allegations. In this action, which is as meritless as the rest of his accusations, Plaintiff contends that Neovia should not have classified his position as exempt and that he is owed unpaid overtime wages. He says that he worked 2,542 hours of overtime—about 106 overtime hours each month—for which he should have been paid more than $185,000 in addition to his $85,000 salary.

Both parties have moved for summary judgment. To decide the case, the Court must resolve the following questions:

1. Does the "administrative exemption" to the FLSA's overtime requirements apply to Plaintiff's position, given that he (a) was paid more than $455 per week, (b) primarily performed non-manual work related to Neovia's and its customers' business operations, and (c) exercised discretion and independent judgment in matters of significance to Neovia?

2. If not, is Plaintiff entitled to damages when he has no evidence, other than his own self-serving testimony, that he actually worked 2,542 hours of overtime and when he failed to use the correct method of calculating overtime for employees who, like him, are paid a fixed salary and work a fluctuating schedule from week to week?

The Court should answer the first question in the affirmative because the undisputed evidence, including Plaintiff's own testimony, demonstrates that Neovia properly applied the administrative exemption to Plaintiff's position. The Supreme Court's recent clarification that exemptions to the FLSA should be given "a fair (rather than a 'narrow') interpretation" reinforces this conclusion. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). A fair reading of the administrative exemption supports Neovia's position on Plaintiff's claims. But, even if it didn't, the Court should still answer the second question in the negative. Either way, summary judgment in favor of Neovia is appropriate.

## II.     STATEMENT OF MATERIAL FACTS

### A.     Plaintiff's Employment with Neovia.

Neovia markets Continuous Improvement solutions to its clients and potential clients. Ex. 2, Decl. of Maria Olson ¶ 4, App. 40. These solutions help its clients find cost savings in logistics operations. Ex. 2, Olson Decl. ¶ 2, App. 40–41. Neovia's Continuous Improvement functions are led by Maria Olson, Neovia's Senior Director of Operations Excellence, who was Plaintiff's direct supervisor for much of Plaintiff's tenure and who previously performed the job duties that Plaintiff's performed for Neovia. Ex. 2, Olson Decl. ¶¶ 2–3, App. 40.

Plaintiff began working for Neovia as a Continuous Improvement Supervisor on or about January 5, 2015. Ex. 2, Olson Decl. ¶ 5, App. 41. His offer letter stated that his "base salary on

an annualized basis will be $85,000." Ex. 3, Offer Letter, App. 46. On or about April 4, 2016, Neovia raised Plaintiff's annual salary to $86,275 per year. Ex. 5, Owens Compensation Information, App. 53. Plaintiff was a salaried employee and was classified as exempt from overtime under the FLSA. Ex. 6, Owens Employment Information, App. 55.

**B.      Plaintiff's Primary Duty Was to Apply Various Tools and Methodologies to Improve Processes at Client Facilities.**

Plaintiff's primary duty was to analyze the operations of various facilities belonging to Neovia's clients and determine how to improve those operations. Ex. 1, Owens Dep. 101:24–102:2, 139:2–21, 150:7–20, App. 21–22, 27, 28 (primary duties involved "improv[ing] operational standards and existing processes"), 162:3–16, App. 30 (same); Ex. 2, Olson Decl. ¶ 7, App. 41. A primary way in which operations were improved was by making them more efficient. Ex. 1, Owens Dep. 101:24–102:2, App. 21–22 (noting that increasing efficiency was his "ultimate goal"), 139:2–21, App. 27, 45:21–46:6, App. 9–10 (explaining that goal of Lean methodologies was to make a "process . . . more efficient or to streamline that process"); 51:25–52:8, App. 11 (testifying that job duties at Neovia were "essentially the same as . . . everything I've explained with [L]ean"); Ex. 2, Olson Decl. ¶ 7, App. 41. The improvement in a process could also take the form of progress measured by other metrics, such as lower costs or improved safety. Ex. 1, Owens Dep. 139:2–21, App. 27; Ex. 2, Olson Decl. ¶ 7, App. 41. In nontechnical terms, then, Plaintiff acted as an "efficiency consultant" to Neovia's customers. Ex. 2, Olson Decl. ¶ 8, App. 41–42.

In carrying out his primary duty of improving operations and processes, Plaintiff trained employees, led or facilitated workshops, conducted audits, recommended improvements, and assisted with the implementation of problem-solving methodologies. *E.g.*, Ex. 1, Owens Dep. 67:25–69:20, App. 14 (training); 36:3–9, App. 7 (facilitation or leadership of workshops),

111:10–11, App. 23 ("I'm like an auditor or inspector."); 158:9–159:3, App. 29 (recommendations), 186:16–14, App. 35 (additional recommendations), 137:5–11 (job involved helping "implement the brand or the system so that [the facility is] prepared to then be audited"); Ex. 9, Owens 2016 Performance Review, App. 69 (Owens reporting that he was "involved with all audits and help[ed] create audit plans and hold teams accountable and on track"); Ex. 2, Olson Decl. ¶ 8, App. 41–42.  Occasionally, Plaintiff performed manual tasks as part of his inquiry into and determination of how a facility worked and to find process improvements, or as part of training exercises.  Ex. 1, Owens Dep. 93:10–15, App. 19 ("[T]he nature of the job required physical engagement to understand what people were doing."); Ex. 2, Olson Decl. ¶ 10, App. 42. These tasks, however, were not his primary duty; rather, they were collateral to, and in service of, his primary duty of making the facility more efficient.  Ex. 1, Owens Dep. 93:16–25, 101:24– 102:2, 139:2–21, App. 19, 21–22, 27; Ex. 2, Olson Decl. ¶ 10, App. 42.  For instance, Plaintiff testified that he might have spent time observing an employee whose job was packing a box; later, he might have stood with that employee and packed boxes himself to get a better understanding of why the employee packed in a certain way.  Ex. 1, Owens Dep. 94:1–95:1, App. 20.  As Plaintiff confirmed, though, his purpose in performing that physical work was to understand the process related to the work, including through documenting the process under investigation, collecting data about the process, and understanding the timing of the process.  Ex. 1, Owens Dep. 94:8–95:4, 99:20–23, 104:8–21, App. 20–22.  Returning to the box-packing example, for instance, Plaintiff explained that the only way he could understand any issues affecting the box-packing employee's performance of his job was "to physically do it myself to see . . . what issues I encounter doing it."  Ex. 1, Owens Dep. 94:13–95:1, App. 20.

Plaintiff was a Continuous Improvement Supervisor.  To perform his primary job duty and provide "continuous improvement" to Neovia's clients' facilities, Plaintiff used various tools and methodologies that existed for the purpose of "[m]aking something better."  Ex. 1, Owens Dep. 74:24–75:7, App. 16.  Neovia's job description for Plaintiff's Continuous Improvement Supervisor position summarizes that position as follows: "Position will function as a project leader.  This position will lead NOS (Neovia Operation Systems) and continuous improvement projects using Lean and Six Sigma tools and methodologies."  Ex. 4, Job Description, App. 51.  "Lean" and "Six Sigma" are methodologies designed to improve performance and reduce waste.  Ex. 1, Owens Dep. 45:11–46:6, App. 9–10; Ex. 2, Olson Decl. ¶ 6, App. 41.  According to Plaintiff, the Lean methodology includes 30 or more "tools," including tools with names like "5 whys," "8 dimensions," "5S," "kaizen workshops," "root cause analyses," and "gemba walks."  Ex. 1, Owens Dep. 48:13–50:18, App. 10–11.  The Six Sigma methodology also includes a large number of tools, including "ANOVA tests," "regression analysis," "correlation analysis," and "data tabulation," among others.  Ex. 1, Owens Dep. 71:23–72:21, App. 15.  NOS tools and methodologies are derived from Lean and Six Sigma tools as well as from International Standard of Organizations ("ISO") tools.  Ex. 1, Owens Dep. 74:3–16, App. 16.

The position description for Continuous Improvement Supervisor provides that the essential job functions of Plaintiff's position were to "function[] as [a] subject matter expert" and "act as [a] trainer and lead workshops."[1]  Ex. 4, Job Description, App. 51.  Plaintiff testified that the description was a generally accurate portrayal of his job.  Ex. 1, Owens Dep. 67:25–69:20, App. 14.  And the record shows that Plaintiff was indeed an expert in methodologies like Lean and Six Sigma.  Plaintiff acquired his knowledge of these methodologies over 25 years of

---

[1] Plaintiff prefers to use the term "facilitate" instead of "lead," but he testified that these terms are identical in meaning.  Ex. 1, Owens Dep. 36:5–10, 217:7–9, App. 7, 35.

experience.  Ex. 1, Owens Dep. 71:13–72:21, App. 15.  Moreover, Plaintiff obtained Green Belt certification, a Neovia certification demonstrating a degree of mastery of Lean and Six Sigma principles, in October 2016 after successfully completing an 80-hour curriculum, passing a comprehensive test, and demonstrating high-quality execution of three projects yielding positive performance results.  Ex. 2, Olson Decl. ¶ 6, App. 41.  Only 21 of 219 employees who began Green Belt training actually received the certification, so Plaintiff's certification is a testament to his expertise.  Ex. 2, Olson Decl. ¶ 6, App. 41.

**C.**     **Plaintiff's Termination and Subsequent Claims.**

In 2016, Maria Olson became aware of irregularities in Plaintiff's business expenses.  Ex. 2, Olson Decl. ¶ 11, App. 42.  Neovia accordingly conducted an internal investigation into Plaintiff's expense reporting.  Ex. 2, Olson Decl. ¶ 11, App. 42-43.  The investigation revealed that Plaintiff had violated Neovia policy regarding expense reports.  Ex. 2, Olson Decl. ¶ 11, App. 43.  Accordingly, Neovia terminated Plaintiff's employment on or about January 20, 2017.  Ex. 2, Olson Decl. ¶ 12, App. 43; Ex. 6, Owens Employment Information, App. 55.  Around the time of his discharge, Plaintiff filed a series of claims and complaints against Neovia, including a claim for unpaid wages with the Texas Workforce Commission, which was denied (and which denial was affirmed on appeal); a charge of discrimination with the Equal Employment Opportunity Commission, alleging race and disability discrimination, which remains pending; a claim with the United States Department of Labor ("DOL") alleging a similar FLSA violation to the one alleged here, which the DOL declined to investigate; and this lawsuit.

**D.**     **Procedural History of This Case.**

Plaintiff's sole claim in this lawsuit is that Neovia misclassified him as exempt under the FLSA and failed to pay him for overtime work he allegedly performed during his two years of employment.  Notably, even before he worked for Neovia, Plaintiff had previously filed an

FLSA action asserting unpaid overtime against a prior employer.   In that case, Plaintiff challenged his exempt status as a lower-level warehouse employee.   That action, filed in the Southern District of Texas, was ultimately resolved and settled by mutual agreement of the parties.   *See Owens v. CEVA Logistics/TNT*, No. 4:11-cv-2237 (S.D. Tex. filed June 15, 2011). Plaintiff, proceeding pro se in this case, filed his original Complaint against Neovia on February 13, 2017, in the Eastern District of Texas, alleging that Neovia violated the FLSA by misclassifying him as exempt.   Neovia moved to dismiss that complaint.   On April 28, 2017, in response to an order from the court, Plaintiff filed his First Amended Complaint; on May 10, 2017, Plaintiff filed a Second Amended Complaint.   Neovia moved to dismiss that complaint or, in the alternative, to transfer it to this District.   Plaintiff then retained counsel, who filed a notice of appearance on June 19, 2017.   The parties thereafter filed a joint motion to transfer venue to this District and agreed to allow Plaintiff to amend his complaint yet again.   On July 21, 2017, Plaintiff filed his Third Amended Complaint, which is his live pleading.

On September 18, 2017, Plaintiff's lead counsel withdrew from the case.   Order [Dkt. #48].   On September 27, the Court granted Plaintiff's local counsel's motion to withdraw. Order [Dkt. #51].   On March 28, 2018, Plaintiff moved for summary judgment on his claim; Neovia responded and requested that the Court delay consideration of that motion until Neovia had the opportunity to complete discovery and seek summary judgment itself [Dkt. ## 81, 86, 87].   Neovia now requests that the court grant it summary judgment on Plaintiff's single claim.

### III.      SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 mandates that summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The moving party bears the initial burden of "informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can meet this burden by identifying elements of a plaintiff's claims that are not supported by any evidence. *Id.* The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585-87 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Rather, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587 (quoting Fed. R. Civ. P. 56(e) (emphasis in *Matsushita*)) (additional citations omitted).

To avoid summary judgment, Plaintiff must present evidence—not simply conjecture, speculation, and unsubstantiated assertions—to support each element of his claim. *See Lewallen v. Conmed Corp.*, 261 F. App'x 704, 706 (5th Cir. 2008) (quoting *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996)). Conclusory allegations are insufficient. *Walters v. Livingston*, 642 F. App'x 416, 419 (5th Cir. 2016) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996)). The court should grant summary judgment "not only when the non-movant presents no evidence, but also when there is not a sufficient conflict in substantial evidence to create a jury question." *Scott v. Univ. of Miss.*, 148 F.3d 493, 504 (5th Cir. 1998) (internal quotations omitted). "A mere scintilla of evidence is insufficient to present a question for the jury." *Id.* No genuine dispute of material fact exists with respect to Plaintiff's claim. Thus, the Court should grant Neovia's Motion.

## IV.       ARGUMENT AND AUTHORITIES

An action for unpaid overtime compensation requires proof of: (1) an employer-employee relationship during the unpaid overtime periods claimed, (2) FLSA coverage of the

plaintiff's activities, (3) the employer's violation of the FLSA's overtime wage requirements, and (4) the amount of overtime compensation owed. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). The plaintiff bears the burden of proof on all elements of an FLSA overtime claim. *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001).

Because Plaintiff was properly classified as exempt from the FLSA, and because he has no competent evidence regarding his alleged damages, Neovia is entitled to summary judgment. But, even if Plaintiff could establish that Neovia violated the FLSA, the undisputed evidence in the record shows that he is not entitled to the full extent of the damages he seeks.

**A.     Plaintiff Was Exempt from the FLSA.**

> **1.     Recent Supreme Court precedent requires that courts give a "fair reading" to the FLSA's many exemptions.**

Plaintiff is not entitled to overtime pay because his position at Neovia was exempt from the FLSA's overtime provisions. These provision "require[] an employer to compensate any covered employee who works in excess of 40 hours in a workweek 'at a rate not less than one and one-half times the [employee's] regular rate.'" *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 333–34 (5th Cir. 2017) (quoting 29 U.S.C. § 207(a)(1)). But not all employees are "covered." The FLSA contains numerous exemptions, including "those employees working 'in a bona fide executive, administrative, or professional capacity.'" *Id.* at 334 (quoting 29 U.S.C. § 213(a)(1).

The Supreme Court recently clarified the standard for construing FLSA exemptions. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). It expressly rejected the view, previously argued by Plaintiff and adopted by many courts, that exemptions should be narrowly construed. *Id.* Instead, the Court explained, exemptions should be given a "fair reading":

> The Ninth Circuit also invoked the principle that exemptions to the FLSA should be construed narrowly. We reject this principle as a useful guidepost for

interpreting the FLSA.  Because the FLSA gives no textual indication that its exemptions should be construed narrowly, there is no reason to give them anything other than a fair (rather than a "narrow") interpretation.  The narrow-construction principle relies on the flawed premise that the FLSA "pursues" its remedial purpose "at all costs."  But the FLSA has over two dozen exemptions in § 213(b) alone, including the one at issue here.  Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement.  We thus have no license to give the exemption anything but a fair reading.

*Id.* (internal quotation marks, brackets, and citations omitted; quoting Scalia, Reading Law, at 363; *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013); *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017)); *accord Carley v. Crest Pumping Techs., L.L.C.*, 17-50226, 2018 WL 2246178, at *3 (5th Cir. May 16, 2018) ("The Supreme Court recently clarified that courts are to give FLSA exemptions 'a fair reading,' as opposed to the narrow interpretation previously espoused by this and other circuits.").  Under a fair reading of the administrative exemption, Plaintiff was exempt from the FLSA's overtime provisions.

### 2.   The FLSA's "administrative exemption" applied to Plaintiff.

The Court should grant summary judgment to Neovia because Neovia properly classified Plaintiff as exempt pursuant to the FLSA's "administrative exemption."  The FLSA's overtime rules do not apply to "employees employed in a bona fide administrative capacity."  29 U.S.C. § 213(a)(1).  That term means any employee:

(1)   compensated on a salary or fee basis of at least $455 per week;

(2)   "whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and

(3)   "whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."

29 C.F.R. § 541.200(a)(1)–(3).

   a.  *Plaintiff earned more than $455 per week.*

The first element is met because Plaintiff earned a minimum annual base salary of $85,000 in 2015 and $86,275 in 2016. Ex. 3, Offer Letter, App. 46; Ex. 5, Owens Compensation Information, App. 53. This is well over $1,500 per week and nearly four times the statutory minimum.

   b.  *Plaintiff's primary duty was performance of non-manual work directly related to the management or general business operations of both Neovia and its customers.*

     i.  Plaintiff's primary duty consisted of non-manual work.

An "employee's primary duty will usually be what she does that is of principal value to the employer, not the collateral tasks that she may also perform even if they consume more than half her time." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990) (citation omitted). Plaintiff's primary duty was to analyze the operations of various facilities of Neovia's clients and determine how to improve those operations as measured by increased efficiency, lower cost, or another metric. Ex. 1, Owens Dep. 101:24–102:2, App. 21–22 (noting that increasing efficiency was "ultimate goal"), 139:2–21, App. 27, 150:7–20, App. 28, 162:3–16, App. 30; Ex. 2, Olson Decl. ¶¶ 7–8, App. 41–42. This was the duty that was "of principal value" to Neovia and its customers. Ex. 2, Olson Decl. ¶¶ 7–8, App. 41–42; Ex. 1, Owens Dep. 138:5–13, App. 27 (noting that value Neovia brings to customers was Neovia's NOS philosophy as well as cost savings); 138:14–18, App. 27 (declining to testify regarding Neovia's business goals "because I don't . . . know anything about that"). The evidence in the record confirms this fact. Plaintiff's job description states that Plaintiff functioned "as a project leader" on "projects using Lean and Six Sigma tools and methodologies." Ex. 4, Job Description, App. 51. Plaintiff, in fact, also described himself as a "project leader" on multiple occasions. Ex. 8, Owens 2015 Performance Review, App. 64; Ex 10, Sept. 19, 2016 Email, App. 77. Moreover, his essential job functions,

according to his job description, were to "function[] as [a] subject matter expert" and "act as [a] trainer and lead workshops" regarding the improvement of facility operations and processes.  Ex. 4, Job Description, App. 51; Ex. 1, Owens Dep. 67:25-69:20, App. 14 (confirming accuracy of job description); Ex. 2, Olson Decl. ¶ 13, App. 43.  This is the sort of primary duty that courts have found to qualify for the administrative exemption.  *E.g.*, *Wolfslayer v. Ikon Office Sols., Inc.*, No. Civ. A. 03-6709, 2005 WL 181913, at *9 (E.D. Pa. Jan. 26, 2005) (holding that supply chain project manager fell within administrative exemption and noting that "Plaintiff's 'primary duty' was to work on implementing e-IKON and thereby to assist in streamlining the structure and organization of IKON's business").

Plaintiff has testified that he performed some physical work in connection with his job.  But "[p]erforming some manual work does not automatically remove an employee from exempt status so long as the manual work is 'directly and closely related to the work requiring the exercise of discretion and independent judgment.'"  *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 519 (6th Cir. 2004) (quoting 29 C.F.R. § 541.203(b)) (finding planners to be exempt despite performance of manual work).  While Plaintiff may have performed manual work on occasion to evaluate operational processes, problems, and inefficiencies, this work was a "collateral task" that was in furtherance of his primary duty as a project leader analyzing and improving processes.  Ex. 1, Owens Dep. 94:8–95:4, 99:20–23, 104:8–21, App. 20–22; Ex. 2, Olson Decl. ¶ 10, App. 42.  As in the box-packing example described above, Plaintiff may have actually packed boxes while studying a facility's operations, but his purpose in doing so was to determine firsthand what issues the employee whose job it was to pack boxes actually encountered: his underlying goal, in other words, was "to understand the process."  Ex. 1, Owens Dep. 94:1–95:4, App. 20, This incidental physical work does not mean that Plaintiff was improperly classified as

exempt under the administrative exemption. *See Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 538 (7th Cir. 1999) ("Just because an employee may spend a significant portion of his time engaged in ministerial or routine tasks does not necessarily prevent the application of the administrative exemption."); *York v. City of Wichita Falls*, 944 F.2d 236, 242 (5th Cir. 1991) (same conclusion regarding executive employees); *Wolfslayer*, 2005 WL 181913, at *9 (finding that time exempt employee spent assisting sales representative was "incidental" to primary duty of assisting with streamlining company structure and organization).

> ii.    Plaintiff's primary duty directly related to both Neovia's and its customers' general business operations.

As the undisputed record demonstrates, Plaintiff's work "directly related to the management or general business operations" of both Neovia and its customers. The Code of Federal Regulations explains what this phrase means:

> The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to ***assisting with the running or servicing of the business***, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

29 C.F.R. § 541.201(a) (emphasis added). Moreover, "[w]ork directly related to management or general business operations includes, but is not limited to, work in functional areas such as auditing; . . . quality control; . . . and similar activities." *Id.* at § 524.201(b). Whether the administrative exemption applies is a legal question, albeit one that ordinarily involves a fact-intensive analysis. *Dewan v. M-I, LLC*, 858 F.3d 331, 334–334 (5th Cir. 2017).

First, Plaintiff's work was directly related to, and in furtherance of, the general business operations of Neovia itself. Neovia is in the business of providing logistics and supply-chain services to its clients. Ex. 2, Olson Decl. ¶ 4, App. 40. Plaintiff's work as a Continuous Improvement Supervisor was directly related to that business: he worked on-site at Neovia's

customers' facilities to improve those facilities' operations and processes, including through enhanced efficiency, quality, cost, or other criteria. Ex. 1, Owens Dep. 95:8–19, App. 20 (job involved identifying issues and resolving them); 101:24–102:2, App. 21 (increased efficiency is "what you want to get to"); 139:2–21, App. 27 (changes Plaintiff helped to bring about could result in increased employee morale, reduction in safety incidents, better organization, lower costs, and increased efficiency). This work involved, among other things, audits and quality control. Ex. 1, Owens Dep. 111:10–11, App. 23 ("I'm like an auditor or inspector."); Ex. 9, Owens 2016 Performance Review, App. 69; Ex. 14, Nov. 30, 2015 Email, App. 116 (telling facility manager that "I did a system audit of current processes but I must spend this upcoming week on HR processes"); Ex. 2, Olson Decl. ¶¶ 4, 7, 8, App. 40–42. As explained above, the Code of Federal Regulations expressly declares that audits, quality control, and "similar activities" are "[w]ork directly related to management or general business operations." 29 C.F.R. § 524.201(b). Plaintiff thus was integral to the functioning of Neovia's business. In fact, Plaintiff's supervisor wrote in a performance review that Plaintiff sought "creative ways to drive change," and that "he lead[] the team in identify[ing] improvement opportunities[,] driving the company forward." Ex. 8, Owens 2015 Performance Review, App. 61; Ex. 1, Owens Dep. 175:10–19, 176:18–23, App. 32 (agreeing with evaluation). *See Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050, 1066 (D. Minn. 2011) (holding that employees whose work was aimed at overall efficiency or mode of operation of employer's *customers* performed work directly related to *employer's* management or general business operations).

Second, Plaintiff's primary duty also directly related to the general business operations of Neovia's customers. The administrative exemption applies to an employee who works for his employer's customers:

> An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, ***employees acting as advisers or consultants to their employer's clients or customers*** (as tax experts or financial consultants, for example) ***may be exempt***.

*Id*. at § 524.201(b) (emphasis added). The Fifth Circuit has explained that a consultant or advisor is exempt from the FLSA's overtime provisions if his advice to his employer's customers regards "matters that involve policy determinations, i.e., how a business should be run or ***run more efficiently***." *Dewan*, 858 F.3d at 337 (quoting U.S. Dep't of Labor, Wage & Hour Div., Op. Letter (Sept. 12, 1997)) (emphasis added). Plaintiff functioned as a consultant for Neovia's clients, and, as explained above, the changes he helped to implement in Neovia's clients' facilities affected such factors as the efficiency, cost, safety, and organization of those facilities' operations. *See, e.g.*, Ex. 1, Owens Dep. 101:24–102:2, 139:2–21, App. 21–22, 27; Ex. 2, Olson Decl. ¶ 7, App. 41. His primary duty thus qualifies him for the administrative exemption for the independent reason that it related to the general business operations of Neovia's clients. *See Cruz*, 764 F. Supp. at 1066.

> c. *Plaintiff's primary duty involved the exercise of discretion and independent judgment with respect to matters of significance.*

Finally, to qualify for the administrative exemption, an employee's primary duty "must include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). Again, Plaintiff's primary duty was to analyze the operations of various facilities belonging to Neovia's clients and determine how to improve those operations. This duty required Plaintiff to exercise discretion and independent judgment in a number of critical respects.

        i.     Plaintiff "exercised independent judgment and discretion" in carrying out his primary job duty.

The exercise of discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Notably, employees can exercise discretion and independent judgment "even if their decisions or recommendations are subject to review or final approval." 29 C.F.R. § 541.202(c). Likewise, the Fifth Circuit has held that the exercise of discretion and judgment need not be final, decision-making authority. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000); *accord Kohl v. Woodlands Fire Dep't*, 440 F. Supp. 2d 626, 644 (S.D. Tex. 2006) ("The fact that others may review or even reverse an employee's judgment does not mean necessarily that the employee will fall outside the FLSA's administrative exemption."). The Code of Federal Regulations also provides that a consultant acts with discretion and independent judgment when he "has made a study of the operations of a business and . . . has drawn a proposed change in organization [and has] the plan reviewed or revised by superiors before it is submitted to the client." 29 C.F.R. § 541.202(c).

The record shows that Plaintiff used his discretion and independent judgment in a number of important respects. For instance, in carrying out his primary duty of improving processes, he had control over, and made and evaluated decisions, regarding a number of key areas:

***Facilitating workshops.*** Plaintiff was a "leader" or "facilitator"[2] of "kaizen" workshops. Ex. 1, Owens Dep. 35:18–36:10, 36:5–10, 217:7-9, App. 7, 35. Kaizen workshops are designed

---

[2] Plaintiff testified that these terms are interchangeable. Ex. 1, Owens Dep. 36:5–10, 217:7–9, App. 7, 35. In his deposition, Plaintiff also characterized a "leader" as an individual with full autonomy and did not characterize his role as one involving leadership. Ex. 1, Owens Dep. 66:22–67:5, App. 14. However, as explained above, the fact that an employee is subject to oversight and review does not mean that he failed to exercise discretion and independent judgment.

to solve problems in production.   Ex. 1, Owens Dep. 116:14–117:12, App. 24.   In this role,
Plaintiff would be responsible for teaching at least some of the substance of the workshop.   Ex.
1, Owens Dep. 38:11–17, App. 8.    He would also help the team reach a solution and, if
necessary, revise that solution.   35:18–36:10, App. 7, 38:11–17, App. 8, 116:14–117:12, App.
24 ("*We* create a solution during the kaizen or during the processes" but "might ultimately start
over and come up with a different one." (emphasis added)).

   ***Selecting and creatively using problem-solving tools.***   Plaintiff selected various Lean,
Six Sigma, and NOS "tools" or methodologies to apply in various situations to solve problems
and resolve issues.   Ex. 1, Owens Dep. 128:1–23, 130:21–131:5, 131:14–22, App. 25–26.   The
Continuous Improvement tools he used existed for the purpose of "[m]aking something better."
74:24–75:7, App. 16.   As Plaintiff testified, the choice tools or methodologies that a Continuous
Improvement Supervisor used was ultimately up to the individual Continuous Improvement
Supervisor.   Ex. 1, Owens Dep. 130:21–131:5; 131:14–22, App. 26.   And as Plaintiff himself
wrote to his supervisor, "[a]s the project leader, I am entitled to the freedom and latitude of
determining what projects I select to use."   Ex. 10, Sept. 19, 2016 Email, App. 77.   Plaintiff also
employed independent judgment and discretion after selecting which tool to use.   He wrote in a
performance evaluation that the use of a standard methodology "also requires consistent
application and creative use of the tools to acquire expected results and deliver customer
satisfaction."   Ex. 8, Owens 2015 Performance Review, App. 61.   Plaintiff's supervisor, too,
noted that Plaintiff sought "creative ways to drive change."   Ex. 8, Owens 2015 Performance
Review, App. 61.

   Plaintiff will likely argue that he merely selected tools from a "toolbox" of recognized
Continuous Improvement methodologies.   But he testified that he exercised his own independent

judgment in determining which methodologies to use to solve a problem, as well as when and how to use them.  *See* Ex. 1, Owens Dep. 128:1–23, 130:21–131:5, 131:14–22, App. 25–26. Accordingly, the existence of a "toolbox" does not mean that Plaintiff was misclassified.  "The existence of standard procedures and guidelines does not mean that [a plaintiff's] responsibilities do not require the type of consistent exercise of independent discretion and judgment this court has found characteristic of other professionals."  *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 527 (5th Cir. 1999) (holding trainers to be exempt under administrative exemption); *accord Cruz*, 764 F. Supp. 2d at 1063 (D. Minn. 2011) (finding that project managers in consultant roles fell within administrative exemption even though they followed standard company method or manual because they "had to problem solve, be creative, work collaboratively, or give advice").

*Managing major projects.*  Throughout his assignments at Neovia's customers' facilities, Plaintiff used his experience and judgment to determine how best to increase the efficiency of processes, lower costs at those facilities, and enact other changes.  Ex. 1, Owens Dep. 101:24–102:2, 139:2–21, App. 21–22, 27; Ex. 2, Olson Decl. ¶ 7, App. 41.  Before even starting at Neovia, Plaintiff had project management experience.  Ex. 1, Owens Dep. 76:10–20, App 16. Plaintiff himself has stated that he was given difficult, important assignments.

For example, Plaintiff, in describing one of his projects, stated that he was "tasked in October 2015 with making a miracle happen."  Pl.'s Br. Supp. Mot. Summ. J. [Dkt # 81-1] at 4; *see also* Ex. 1, Owens Dep. 181:21–182:5, App. 33–34 (describing project at one of larger facilities Neovia managed as "a real challenge on a lot of fronts").  This particular project required assisting with a facility seeking to achieve a certain International Standard of Organizations ("ISO") certification within a short period of time.  Plaintiff wrote that "I will be

facilitating the Stage 1 and 2 audits" needed to achieve this certification.  Ex. 12, Nov. 11, 2015

Email, App. 107.   He then applied his 25 years of experience in Lean and Six Sigma

methodologies, as well as his knowledge of ISO certification, to complete this and the other

projects he was assigned.  Ex. 1, Owens Dep. 74:12–19, 165:25–166:6, App. 16, 30–31.   In so

doing, he had little oversight from his supervisors, who were rarely on site.  Ex. 1, Owens Dep.

79:22–80:10, 83:9–20, App. 17, 18; Ex. 2, Olson Decl. ¶ 9, App. 42.   His supervisors expected

him to be the "point person" for the projects to which he was assigned and to manage those

projects.  Olson Decl. ¶ 9, App. 42.   Furthermore, Plaintiff's work in managing these projects

was important to the company and its operations.  Ex. 8, Owens 2015 Performance Review, App.

61 (noting that Plaintiff's work "dr[ove] the company forward"); Ex. 1, Owens Dep. 175:10–19,

176:18–23, App. 32 (agreeing with evaluation); Ex. 9, Owens 2016 Performance Review, App.

70 ("Sean led improvement projects at Memphis & Ontario JLR, and within the Samsung

Network."); Ex. 2, Olson Decl. ¶ 9, App. 42.

   ***Auditing procedures at client facilities.***   Plaintiff himself has testified that he was "like

an auditor or inspector."   Ex. 1, Owens Dep. 111:10–11, App. 23.   He conducted audits of

Neovia facilities as part of improving processes at those facilities.   Ex. 8, Owens 2015

Performance Review, App. 64; Ex. 1, Owens Dep. 178:15–179:10, App. 33; Ex. 9, Owens 2016

Performance Review, App. 69 (Plaintiff reporting that he was "involved with all audits and

help[ed] create audit plans and hold teams accountable and on track"); Ex. 2, Olson Decl. ¶ 8,

App. 41–42.   He  also determined which processes needed to be audited.   Explaining his

prioritization of various audits to one facility manager, he wrote "I did a system audit of current

processes but I must spend this upcoming week on HR processes which is critical for the Stage II

ISO audit."  Ex. 14, Nov. 30, 2015 Email, App. 116.

***Scheduling trainings and observation of workers.***  Plaintiff also worked out his own daily schedule and training schedules, and he would "roll with the punches" to ensure that he accomplished his tasks within the constraints established by the schedule of the facility in which he was working.  Ex. 1, Owens Dep. 91:14–92:2; 93:16–25; 103:13–15, App. 19, 22; *see also id.* at 91:7–13, App. 19 (noting that, when he worked at Neovia headquarters, Plaintiff would prioritize his own workload).  Plaintiff's independent judgment regarding the scheduling of trainings is reflected in an email he wrote towards the beginning of a major project, in which he told the facility leadership team that "I have put together a schedule of *important* training agendas that we need to accomplish over the next 3 weeks."  Ex. 13, Oct. 15, 2015 Email, App. 111 (emphasis in original).  He noted that the facility leadership team could determine the actual days on which training events would occur based on the needs of the facility, but he retained logistical control of the trainings, stating his desire "to do the training by groups of I, II and III based on a proportionate number of the associates."  Ex. 13, Oct. 15, 2015 Email, App. 111–12.

***Selecting and leading trainings.***  Plaintiff led training sessions as part of his work with Neovia.  In so doing, he assembled training materials using various NOS training modules that Neovia had available.  He would "select the appropriate training for what needed to happen."  Ex. 1, Owens Dep. 166:12–167:10, App. 31.  He would then lead training sessions to teach employees about the applicable Neovia concepts.  As Plaintiff wrote in a self-evaluation, "[t]he job role requires being creative at all levels based on the diversity of the work teams and the need to understand the dynamic of the team and embedding NOS principles within the work culture."  Ex. 8, Owens 2015 Performance Review, App. 61.  Thus, not only did he choose the appropriate training subjects, he also used his own creativity in teaching key principles to team members.

*Recommending and helping implement improvements to existing processes.* Plaintiff testified in his deposition that he would make at least two different types of recommendations.[3] First, he recommend specific process-improvement projects to facility management or other leaders after studying data regarding the processes at the facility. Ex. 1, Owens Dep. 158:9–159:3, App. 29. Second, he recommended solutions or ideas to individuals after questioning them on a problem, educating them on his suggestions, and "point[ing] out what [he] saw in a process." Ex. 1, Owens Dep. 158:9–159:3, App. 29. Plaintiff himself described the impact of his work thus: "[b]ased on success and improvement in metric categories or project completion, my influence, when placed and engaged in any environment, has a relatively significant impact on those around me and the environment." Ex. 9, Owens 2016 Performance Review, App. 68; Ex, 1, Owens Dep. 184:15–24, App. 34 (confirming accuracy of same). Indeed, Neovia and Plaintiff's supervisor expected that Plaintiff would offer recommendations regarding process improvements. Ex. 2, Olson Decl. ¶ 8, App. 41–42.

Documents created by Plaintiff repeatedly demonstrate the kinds of recommendations and suggestions he made. Materials he prepared for a presentation recommend the use of a stretch wrap machine in a client's facility. Ex. 11, Aug. 3, 2016 Presentation, App. 80–105. In recommending the machine, Plaintiff also noted various other problems with the processes then in place, including that (1) "[d]rivers are wandering into [the] facility undetected," which Plaintiff deemed "*not good*," and (2) there was "[n]ot enough leadership visibility." Ex. 11, Aug. 3, 2016 Presentation, App. 90–91 (emphasis in original). In other words, not only did Plaintiff recommend a particular machine to help solve the customer's issues, but he also identified other aspects of the customer's operations that, he believed, required improvement.

---

[3] Plaintiff was very reluctant to use the word "recommend" when describing his job functions. However, as explained herein, his testimony and the documentary record show that plaintiff did indeed make what can only be characterized as recommendations, regardless of the terminology Plaintiff may prefer to employ.

In short, Plaintiff exercised discretion and independent judgment because he (1) had the authority to formulate, affect, and implement operating practices; (2) carried out major assignments in conducting Neovia's business operations; and (3) performed work that affected Neovia's business operations to a substantial degree. *See* 29 C.F.R. § 541.202(b). Courts have repeatedly held that these activities require discretion and judgment and that employees who perform them are exempt from the FLSA. *E.g.*, *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527 (7th Cir. 1999) (finding that employee exercised discretion and independent judgment while working as consultant in human resources consulting group where, among other things, he made improvements in efficiency by developing methodologies to improve client services, attempted to solve or fix problems for clients, and made recommendations to clients, even though he had to consult with supervisors); *Carbaugh v. Unisoft Intern., Inc.*, No. Civ. A. H-10-0670, 2011 WL 5553724, at *1 (S.D. Tex. Nov. 15, 2011) (applying administrative exemption to employee who "had to identify the customers' needs, translate them into specifications to be implemented, and assist in the implementation"); *Cruz*, 764 F. Supp. 2d at 1066 (holding that administrative exemption applied where "Plaintiffs' work is aimed at the overall efficiency or mode of operation of the Lawson customers—they are assisting in implementing and configuring Lawson software to run the client's business in a more efficient way"); *Verkuilen v. Mediabank*, No. 09 C 3527, 2010 WL 3003860, at *1–2 (N.D. Ill. July 27, 2010) (holding that employee who provided service and support to customers who bought employer's software exercised discretion because she "determined the nature of [clients'] problem[s] and how to handle [them]" and conducted training sessions, noting that "[o]f course, there were company policies for her to follow, but while her work was channeled by these standards, she nonetheless possessed discretion and used

independent judgment in deciding how to address clients' problems with [her employer]'s software and in training users of the software").

ii.      Plaintiff's discretion affected "matters of significance."

"The term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a). The matters to which Plaintiff applied his judgment and discretion were important and consequential, both to Neovia and to its customers, as explained above. *See also* Pl.'s Br. Supp. Mot. Summ. J. [Dkt # 81-1] at 4; Ex. 1, Owens Dep. 175:10–19, 176:18–23, 181:21–182:5, App. 32–34; Ex. 2, Olson Decl. ¶ 9, App. 42. Neovia is in the business of providing logistics services to its clients, including particularly though increasing the efficiency of their facility operations and processes, and customers hire Neovia to achieve these improvements. Ex. 2, Olson Decl. ¶ 2, App. 40–41. Plaintiff worked directly to accomplish that very goal, meaning that his decisions affected matters that were significant to Neovia itself and to its customers. As his supervisor confirmed, he "dr[ove] the company forward." Ex. 8, Owens 2015 Performance Review, App. 61; Ex. 1, Owens Dep. 175:10–19, 176:18–23, App. 32 (agreeing with evaluation).

**B.  Plaintiff's Has Not Shown That He Is Entitled to Damages, and His Damages Calculations Are Flawed.**

Even if Neovia improperly classified Plaintiff as exempt, it would still be entitled to summary judgment because Plaintiff's damages calculations are fatally flawed.

1.      **Plaintiff's evidence is insufficient to prove his alleged damages.**

To succeed on an FLSA overtime claim, the plaintiff has the burden of showing the amount of overtime compensation owed. *Johnson*, 758 F.3d at 630. The Fifth Circuit has explained that this requires a plaintiff to introduce "sufficient evidence to show the amount and extent of [unpaid overtime] work as a matter of just and reasonable inference." *Ihegword v.*

*Harris County Hosp. Dist.*, 555 F. App'x 372, 374 (5th Cir. 2014).   Plaintiff cannot met his burden because he has no evidence to support any "just and reasonable inference" of the amount of damages he claims.   The Court should thus grant summary judgment in favor of Neovia for this independent reason.

Plaintiff's damages calculation relies on a self-created chart purporting to show how many overtime hours he worked.   *See* Pl.'s App. 1 Supp. Pl.'s Mot. for Summ. J. at 3 [Dkt. # 81-1].   That is insufficient.   He has no contemporary documents recording his time, and the documents he has proffered do not support his contention that he worked 2,542 hours of overtime in less than two years.   Plaintiff testified that he destroyed all contemporary evidence of the amount of time he worked.   Ex. 1, Owens Dep. 236:22–237:7, 237:22-238:2, App. 36–37. He will likely point to a handful of after-hours and weekend emails.   But these show, at most, that he sometimes wrote or received emails outside of normal work hours (assuming he read them then).   They do not even prove that he worked any overtime at all because entitlement to overtime compensation is based on the number of hours worked in a *workweek*, not in a *day*.   *See Kirk v. Invesco, Ltd.*, No. CV H-15-833, 2016 WL 4394336, at *5 (S.D. Tex. Aug. 18, 2016) (finding that (1) list of the dates and times when plaintiff sent emails, (2) GPS phone records indicating her location, and (3) her mother's deposition testimony that she worked during evening hours were insufficient proof of overtime hours worked), *aff'd*, 700 F. App'x 334 (5th Cir. 2017), *cert. dismissed*, 138 S. Ct. 1164 (2018).

The Court is left, then, with Plaintiff's self-created summary chart and his self-serving testimony.   *See* Pl.'s App. 1 Supp. Mot. Summ. J. at 3; Pl.'s App. 7 Supp. Mot. Summ. J.   As the Fifth Circuit has held, "an unsubstantiated and speculative estimate of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of

just and reasonable inference." *Ihegword*, 555 F. App'x at 375 (citation omitted).  Plaintiff's

chart and unsubstantiated testimony are the type of evidence that courts have found to be

insufficient evidence of overtime hours.  *E.g.*, *Kirk*, 2016 WL 4394336, at *4 (finding plaintiff's

testimony that she worked 60 hours per week "insufficient to establish that she performed

overtime work for which she was not compensated"); *Dixon v. First Choice Messengers, Inc.*,

No. 4:14-CV-02895, 2016 WL 774680, at *3 (S.D. Tex. Feb. 29, 2016) (holding that plaintiff's

estimation of overtime worked was insufficient); *Oti v. Green Oaks SCC, LLC*, No. 4:13-CV-

816-A, 2015 WL 329216, at *3 (N.D. Tex. Jan. 23, 2015) (granting summary judgment to

defendant where plaintiff relied solely on "guess as to how many overtime hours she worked").

Plaintiff has not shown sufficient evidence of either the existence of damages or any "just and

reasonable inference" of the amount of damages.  *See Ihegword*, 555 F. App'x at 374.  He

therefore cannot sustain an FLSA claim for unpaid overtime, as such a claim requires proof of

"the amount of overtime compensation owed."  *Johnson*, 758 F.3d at 630.

### 2.    The fluctuating workweek applies to Plaintiff's claim.

Even if Plaintiff should have been treated as nonexempt under the FLSA, the fluctuating

workweek method would, as a matter of law, apply to how any overtime payments due to him

would be calculated.  His damages calculations are thus faulty.

The FLSA provides that a non-exempt employee may not be employed for a workweek

longer than 40 hours "unless such employee receives compensation for his employment in excess

of the hours above specified at a rate not less than one and one-half times the regular rate at

which he is employed."  29 U.S.C. § 207(a)(1).  The FLSA, however, does not define the term

"regular rate."  The Supreme Court, in interpreting this section of the FLSA, announced and

approved of the fluctuating workweek method of calculating an employee's "regular rate"

decades ago.  *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 580 (1972).  It is

now codified in the DOL's regulations as one of the methods available to an employer for calculating overtime compensation.  The relevant regulation provides:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. ***Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.***

29 C.F.R. § 778.114(a) (emphasis added).

That is, for the fluctuating workweek method to apply, (1) the employee's hours must fluctuate from week to week, (2) the employee must receive a fixed salary that does not vary with the number of hours worked during the week, (3) the fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage, and (4) the employer and employee must share a clear mutual understanding that the employer will pay that fixed salary regardless of the number of hours worked.  29 C.F.R. § 778.114(a).  If those four conditions are met, overtime pay is calculated by dividing the fixed salary by the number of hours actually worked in a given week to determine the "regular rate," and the employer is liable for half-time for hours in excess of 40.  *Id.* § 778.114(b).  "[E]mployees bear

the burden of demonstrating that the fluctuating workweek method is inapplicable." *Hills v. Entergy Operations, Inc.*, 866 F.3d 610, 615 (5th Cir. 2017).

Here, all of the requirements for the fluctuating workweek method are met. First, according to Plaintiff himself, his hours did indeed fluctuate from week to week. Pl.'s App. 1 Supp. Pl.'s Mot. for Summ. J. at 3 [Dkt. # 81-1]. Second, Plaintiff received a fixed salary every week that did not vary with the number of hours worked. Ex. 1, Owens Dep. 58:5–17, App. 12. Third, that salary—$85,000 in 2015 and $86,275 in 2016—was sufficient to provide a "regular rate" of at least the minimum wage every week, no matter how many hours he worked. Ex. 3, Offer Letter, App. 46. Fourth, a clear mutual understanding existed that the employer will pay that fixed salary regardless of the number of hours worked. This is satisfied by Plaintiff's offer letter, which he signed and initialed, and which demonstrates his consent to receive a "base salary on an annualized basis [of] $85,000 to be paid in accordance with the Company's regular payroll process and procedures." Ex. 3, Offer Letter, App. 46. Plaintiff testified that he understood the contents of the letter. Ex. 1, Owens Dep. 63:9–12, App. 13. *See Donovan v. Mercer*, 747 F.2d 304, 309 n.4 (5th Cir. 1984) ("A person who intentionally signs a document is bound by its contents, whether or not he in fact read the document."). Further, Neovia's Employment Handbook provides that "[e]xempt employees are paid a salary commensurate with their position, responsibility, and work schedule ***and their salary compensates the employee for all hours and days worked***." Ex. 7, Neovia Handbook Excerpts, App. 59 (emphasis added). "[T]o satisfy the 'clear mutual understanding' requirement, an employer merely needs to *communicate* that the employee's salary covers all hours worked." *See Novick v. Shipcom Wireless, Inc.*, No. 16-CV-0730, 2016 WL 9308201, at *4 (S.D. Tex. Nov. 22, 2016) (citing *Clark v. Williamson County*, No. A-10-CA-869 LY, 2012 WL 1222950, at *5 (W.D. Tex. Apr.

11, 2012) (emphasis in original).   Moreover, Plaintiff did indeed receive a fixed payment, regardless of how many hours he worked per week, for the entire length of his employment with Neovia.  *See Singer v. City of Waco, Tex.*, 324 F.3d 813, 824–25 (5th Cir. 2003) (stating that courts "can determine how many hours the salary is 'intended to compensate' by examining what happens under the contract").  Thus, the fluctuating workweek method applies.[4]

So, even if Plaintiff should not have been classified as exempt, any overtime owed to him must be calculated using the fluctuating workweek method—that is, by determining his "regular rate" for a given week by dividing the number of hours worked that week into his fixed salary, and paying him half-time overtime for each hour above 40 in that week.  Plaintiff's calculations, are incorrect because he failed to use this method, and he is therefore not entitled to recover the damages he seeks.

**C.    Plaintiff Has Not Established That Neovia Committed a Willful Violation of the FLSA.**

Even if Plaintiff were correct that he should have been classified as nonexempt, he cannot show a willful violation of the FLSA.  If a plaintiff is successful in showing that an employer committed a willful violation of the FLSA, the statute of limitations extends from two to three years.  29 U.S.C. § 255(a).  To establish a willful violation, a plaintiff must show that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016)

---

[4] It does not matter whether Plaintiff's weekly hours fluctuated above and below 40.  "[N]either existing authority nor the language of 29 C.F.R. § 778.114(a) supports [the] argument that an employee's hours [must] fluctuate above and below 40 for the fluctuating workweek method of computing overtime compensation to apply."  *Mitchell v. Abercrombie & Fitch Co.*, 428 F. Supp. 2d 725, 735 (S.D. Ohio 2006), *aff'd*, 225 F. App'x 362 (6th Cir. 2007) (collecting cases).  *See, e.g., Flood v. New Hanover County*, 125 F.3d 249 (4th Cir. 1997) (employees worked fixed, alternating workweeks that ranged between 48 and 72 hours; court upheld the fluctuating workweek method as FLSA compliant and cited a DOL letter ruling approving the FWW method where an employee worked alternating, fixed weeks of 43 and 51 hours); *Condo v. Sysco Corp.*, 1 F.3d 599, 601–602 (7th Cir. 1993); *Ramos v. Telgian Corp.*, 176 F. Supp. 3d 181, 195-196 (E.D.N.Y. 2016); *Garcia v. Yachting Promotions, Inc.*, No. 15-20776-Civ-Scola, 2015 WL 12533144, *2 (S.D. Fla. Dec. 8, 2015) (citing *Mitchell*); *Evans v. Lowe's Home Centers, Inc.*, No. 3:CV-03-0438, 2006 WL 1371073, *3 (M.D. Pa. May 18, 2006).

(quoting *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133-34 (1 988)).   "A negligent violation is not a willful violation, and an unreasonable violation does not necessarily constitute a willful violation."   *Id*. (internal quotations and citation omitted).   "Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable." *Zannikos v. Oil Inspections (U.S.A.), Inc*., 605 F. App'x 349, 360 (5th Cir. 2015) (citing cases).   The record is devoid of evidence showing that any alleged misclassification was willful.   Accordingly, Neovia is entitled to summary judgment on this issue.

## V.      CONCLUSION

For the foregoing reasons, Neovia respectfully requests that the Court grant its Motion for Summary Judgment, dismiss Plaintiff's lawsuit with prejudice, and award Neovia its costs, attorneys' fees, and all other and further relief, at law or in equity, to which it is justly entitled.

Respectfully submitted,

*/s/ Jeremy W. Hays*
Jana S. Baker
Texas Bar No. 00794610
jana.baker@ogletreedeakins.com
Jeremy W. Hays
Texas Bar No. 24083156
jeremy.hays@ogletreedeakins.com

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
8117 Preston Road, Suite 500
Dallas, Texas  75225
Telephone:  214.987.3800
Facsimile:  214.987.3927

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

      This is to certify that on May 31, 2018, the foregoing document was electronically transmitted to the Clerk of Court using the Court's ECF system, which will provide a Notice of Electronic Filing to Plaintiff.

                                      */s/ Jeremy W. Hays* _____
                                        Jeremy W. Hays

33893340.3

33893340.3